# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**v.**                                            **Case No: 6:25-cr-49-AGM-NWH**

**KASEY JAMES CAUDILL**

_____/

## SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE

Five-year-old Kasey Caudill would recount stories of monsters to his mother and his great aunt.[1] The monsters he told stories about were scary. The monsters were always older than him. Sometimes the monsters were girls, sometimes the monsters were boys. Sometimes the monsters even gave him toys, but young Kasey Caudill still did not like the monsters. The monsters in Mr. Caudill's life were not imaginary, they were real. Unbeknownst to his mother and his aunt at the time, the monsters in Mr. Caudill's were his babysitter and other kids from school and the neighborhood who sexually abused him. Mr. Caudill's babysitter sexually abused him when he was only five years old.[2] A year later, Mr. Caudill was sexually abused by another babysitter.[3] While suffering sexual abuse from his babysitter, young boys in the neighborhood also began sexually abusing him when he was six

---

[1] *See* App. D-1; *See* Dr. Sullivan Psychological Evaluation.
[2] Dr. Sullivan Evaluation, 2.
[3] *Id.*

-1-

years old.[4] The sexual abuse lasted four years but the aftermath is ongoing. "Abuse is never contained to a present moment, it lingers across a person's lifetime and has pervasive long-term ramifications," writes author Lorraine Nilon in her novel, Breaking Free from the Chains of Silence. A licensed psychologist, Dr. Sullivan, conducted a psychological evaluation on Mr. Caudill.[5] In her evaluation, she shed light on how child sexual abuse can affect children. "Early exposure to sex is confusing, and, as the child tries to make sense of it, problems with thoughts, feelings, and behavior may emerge."[6]

Following the sexual abuse, Mr. Caudill's life and upbringing continued to have its challenges. Before heading off to school one morning, Mr. Caudill went to his dad's room to say goodbye for the day. Instead of receiving a hug and a goodbye from his dad, he found his dad dead. "He had foam coming out of his mouth and nose."[7] "When Kasey went to tell him goodbye, that he was leaving for school, his dad was not responding. I recalled he called me crying at work and told me that he thought his dad was dead," writes Mr. Caudill's mother in her letter to the Court.[8] Mr. Caudill was only thirteen years old when his father died. About his father's death, Mr. Caudill told Dr. Sullivan, "...I always thought, if I had called 911, I could have saved him."[9]

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] App. D-1.
[9] Dr. Sullivan Psychological Evaluation, 3.

After finding his dad dead that day, Mr. Caudill began to spiral. He developed a lot of anger, and he acted out.[10] "He started doing bad in school and didn't want to go. He started having stomach trouble."[11] The stomach issues combined with his anger led him to drop out of school. Shortly thereafter Mr. Caudill lost his friend in a car accident.[12] Times only continued to get more trying. Mr. Caudill and his mom moved out of his childhood home and into his grandmother's home to help take care of her after she broke her hip.[13] Eventually his grandmother passed and Mr. Caudill and his mother remained in her home.[14] Shortly after his grandmother's passing, Mr. Caudill's friend committed suicide.[15] "That was a very dark time for Kasey."[16]

In the midst of the dark times, the same year as his father's passing, Mr. Caudill started to view pornography and eventually developed a pornography addiction.[17] "As a youth with a history of sexual trauma and the death of his father, pornography provided an escape from negative emotions.[18] "Reenactment of trauma is a way that a person may try to understand and come to terms with trauma….Reenactment may involve a victim of sexual abuse now becoming the abuser, as a means of trying to understand what happened and what the abuser

---

[10] *Id.* at 4.
[11] App. D-1.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Dr. Sullivan Psychological Evaluation, 4.
[18] *Id.*

was thinking and feeling."[19] Dr. Sullivan opines that reenactment of trauma as a way of understanding it may have contributed to Mr. Caudill's behavior in the instant case.[20]

Mr. Caudill recently realized that the monsters he tried to bury would not stay underground, that they could only be laid to rest once he faced them. At present, he has been forced to face them and himself in the mirror. "As a youth, Mr. Caudill tried to avoid the confusing thoughts and feelings associated with the sexual abuse and death of his father. He viewed child pornography, engaged in sex with similar-aged peers, drank alcohol, used marijuana and generally had problems with emotional and behavioral self-regulation. All of this avoidance worked temporarily, but he continued to return to confusing thoughts and feelings about sexual abuse, which contributed to a cycle of behavior that persisted into adulthood."[21]

Kasey James Caudill, by and through his undersigned counsel, respectfully submits this Sentencing Memorandum and Request for a Downward Variance for the Court's consideration.  Mr. Caudill has accepted responsibility and pled guilty to both counts of the Information which charge coercion and enticement of a minor to engage in sexual activity. These charges subject him to a ten-year mandatory minimum and a guideline range of life in prison. Additionally, he faces up to a lifetime of supervised release and a lifetime of reporting to authorities as a sex

---

[19] *Id.* at 5.
[20] *Id.*
[21] *Id.* at 10.

offender. Mr. Caudill understands he committed a crime, and he must be punished. He also understands that there are real victims of his conduct and for that, he is especially remorseful.

Given all the relevant information, policies and circumstances, including but not limited to the advisory guidelines and the factors set forth in section 3553(a), undersigned counsel submits to this Court that a downward variance followed by a term of supervised release is a reasonable sentence and is sufficient but not greater than necessary to achieve the goals of sentencing.

**The Advisory Guideline Range Far Exceeds a Reasonable Sentence**

Prior to *Booker*[22], the Federal sentencing guidelines yielded a mandatory range of imprisonment and judges had no ability to utilize their discretion in sentencing. The Supreme Court recognized the importance of judicial discretion and the consideration of other sentencing factors in *Booker*, *Pepper*[23] and *Peugh*[24]. Under the current state of the law, a district court is still required to consult the guidelines. Discretion in sentencing is a key part of the judicial process. "The district court may not presume that the Guideline range is reasonable."[25]  The current child pornography guidelines were enacted by Congress, not the Sentencing Commission (Commission), and are based in visceral reactions[26] to a

---

[22] *United States v. Booker,* 543 U.S. 220 (2005).
[23] *Pepper v. United States*, 562 U.S. 476 (2011).
[24] *Peugh v. United States* 569 U.S. 536 (2013).
[25] *Gall v. United States,* 552 U.S. 38 (2007).
[26] "Possessors of child pornography are modern-day untouchables. We cannot fathom how they can be aroused by images of prepubescent children being brutalized. And, because we cannot imagine that we personally know anyone so perverted, we are not

certain category of offender instead of empirical data. The sentencing guidelines are the foundation of a Federal sentencing system that is purported to punish the worst offenders with harsher sentences. Yet because many of the child pornography enhancements, such as the use of technology, apply to virtually every child pornography offense, there is hardly any distinction for the worst offenders.

At level 43, category II, the guidelines provide for an overwhelming sentencing range of life.[27]  The introductory commentary in Chapter One of the United States Sentencing Guidelines explains that a sentencing court must first correctly calculate the applicable guideline range as a starting point and initial bench mark, and then ultimately determine the appropriate sentence after considering the factors set forth in 18 U.S.C. §3553(a).  U.S.S.G. §1A1.1 Mr. Caudill's guideline imprisonment range falls in the maximum range of imprisonment. A term of imprisonment of life  is unreasonable and greater than necessary given Mr. Caudill's history of characteristics and the nature of Mr. Caudill's conduct specifically.

---

bothered by the idea that these men are cast out to serve long periods in prison. Their prurient interests are so foreign that our citizens want them permanently removed from society. Many fear that those who view these images will also personally harm a child. And, wanting to punish someone for the crimes that these horrible images embody, society seeks harsh sentences for anyone who participates in this market. Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers. The resulting punishment under the Guidelines may be more a reflection of our visceral reaction to these images than a considered judgment of the appropriate sentence for an individual defendant." *United States v. Cruikshank*, 667 F. Supp. 2d 697, 703 (S.D.W. Va. 2009)

[27] PSR¶95.

*Egregious Offenders*

According to a Department of Justice press release, Ghislane Maxwell enticed and groomed minor girls to be sexually abused by Jeffrey Epstein and she participated in the sexual abuse of minor victims as well.[28] Her conduct spanned over the course of a decade, involved her sexually trafficking hundreds of teens across several different countries.[29] Ghislaine Maxwell denied her guilt and went to trial.[30] After being found guilty at trial, she was sentenced to twenty years in prison.[31] Mr. Caudill's did not go to trial, his conduct did not involve hundreds of women and did not span across a decade.

More locally, those receiving life sentences for their conduct within the Orlando Division of the Middle District of Florida can also be distinguished from Mr. Caudill's conduct. Jordan Trexler was sentenced to life in federal prison after being convicted at trial.[32] His offenses involved grooming a minor victim, getting her intoxicated, sexually abusing her and recording his sexual abuse.[33] At trial, the minor victim had to testify. Jordan Trexler's guideline range was life, and his total

---

[28] *See* Press Release, U.S. Dep't of Just.*, Ghislaine Maxwell Sentenced To 20 Years in Prison For Conspiring With Jeffrey Epstein to Sexually Abuse Minors* (June 28, 2022), https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *See* Press Release, U.S. Dep't of Just.*, Casselberry Man Sentenced To Life in Prison For Enticing A Minor To Engage In Illegal Sexual Activity And Producing Child Sexual Abuse Material (Mar. 12, 2025),* https://www.justice.gov/usao-mdfl/pr/casselberry-man-sentenced-life-prison-enticing-minor-engage-illegal-sexual-activity
[33] *Id.*

offense level was 43 and his criminal history category was II, identical to Mr. Caudill's. Dissimilar however, Mr. Caudill's conduct did not involve getting a minor victim intoxicated, personally sexually abusing a minor victim, forcing her to testify in front of over a dozen strangers, or denying his guilt.

Italo Bonini was sentenced to life in prison after pleading guilty to enticement of a minor to engage in sexual activity and 30 years imprisonment for the production of child sexual abuse material.[34] Andre Lewis pleaded guilty to enticement of a minor and received life in prison where his conduct involved threatening minor victims with kidnaping, rape, guns and bodily injury if they did not comply with his demands to engage in sexual activity with him.[35] Andre Lewis' total offense level was 40 and his criminal history category was VI. Andre Lewis' guideline range was 360 months to life. In imposing the sentence, the Judge found that Andre Lewis had no empathy for the victim, was dangerous and had no redeemable qualities. Eric Lance Reynolds received a sentence of life in prison for coercing and enticing a child to engage in sexual activity.[36] Specifically, Eric

---

[34] *See* Press Release, U.S. Dep't of Just*., Former Orlando Middle School Teacher Sentenced To Life in Federal Prison (Nov. 19, 2025),* https://www.justice.gov/usao-mdfl/pr/former-orlando-middle-school-teacher-sentenced-life-federal-prison.

[35] *See* Press Release, U.S. Dep't of Just*., Orlando Man Who Used Internet To Sexually Exploit 12-Year-Old Sentenced To Life In Prison (Nov. 18, 2022),* https://www.justice.gov/usao-mdfl/pr/orlando-man-who-used-internet-sexually-exploit-12-year-old-sentenced-life-prison.

[36] *See* Press Release, U.S. Dep't of Just*., Lake County Man Sentenced To Life In Prison For Coercing, Engagin In Sexual Acitivty With A Child And Distrbuting Child Sexual Abuse Images Over The Internet (June 15, 2022),* https://www.justice.gov/usao-mdfl/pr/lake-county-man-sentenced-life-prison-coercing-engaging-sexual-activity-child-and.

Reynolds sexually abused a prepubescent child over the course of several years.[37] In addition, he offered to allow a registered sex offender to sexually abuse the child in exchange for money.[38] The registered sex offender agreed and both he and Eric Reynolds sexually abused the child on several occasions and forced the child to wear a blindfold.[39] Danny James McLaughlin was sentenced to life in prison after he communicated online with someone he believed to be the father of a minor victim and detailed his intentions to physically and sexually torture the child before killing her.[40] Deepak Deshpande was sentenced to life in prison for enticing a minor to engage in sexual conduct.[41] Deepak Deshpande traveled to Orlando from California four times to meet a minor victim and each time he filmed himself sexually assaulting the minor victim.[42] Following his arrest, Deshpande planned to kidnap and murder the minor victim before his trial but his efforts were unsuccessful.[43] Luis E. Morales was sentenced to life in prison for child sex trafficking and transporting children across state lines to engage in sexual

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *See* Press Release, U.S. Dep't of Just*., Colorado Man Sentenced To Life In Federal Prison For Murder-For-Hire And Enticing 13-Year-Old For Sex (Feb. 6, 2020),* https://www.justice.gov/usao-mdfl/pr/colorado-man-sentenced-life-federal-prison-murder-hire-and-enticing-13-year-old-sex.

[41] *See* Press Release, U.S. Dep't of Just*., California Man Sentenced To Life in Federal Prison For Sexually Exploiting Minor In Orlando (Apr. 11, 2019),* https://www.justice.gov/usao-mdfl/pr/california-man-sentenced-life-federal-prison-sexually-exploiting-minor-orlando.

[42] *Id.*

[43] *Id.*

activity.[44] Luis Morales went to trial and was a self-proclaimed Apostle and transported a minor victim who was a ministry member from Florida to Connecticut knowing the minor victim would be forced to engage in a commercial sex act.[45] Mr. Caudill's conduct is not nearly as egregious as other offenders in this district who received life sentences. Mr. Caudill's offense conduct, especially considering the self-reflection he has done, does not warrant a sentence of life imprisonment.

**Request for a Downward Variance: Nature and Circumstances of the Offense, the Need for the Sentence Imposed to Reflect Just Punishment for the Offense, Afford Adequate Deterrence, Protect the Public, and Promote Respect for the Law**

The sentence imposed should consider the history and characteristics of the defendant and the need for the sentence imposed. 18 U.S.C. §3553. A downward variance will promote respect for the law, afford adequate deterrence, protect the public from future crimes of the defendant and provide the defendant with needed educational, vocational training, medical care or correctional treatment. *Id.*

### Acceptance of Responsibility

Coercion and enticement of a minor is a serious offense. The crux of Mr. Caudill's conduct was messaging a mother in the Philippines and paying her for photos and videos of her minor children engaging in sexual acts. Mr. Caudill fully accepts responsibility for his offense. Admission of guilt may properly be taken into

---

[44] *See* Press Release, U.S. Dep't of Just.*, En Guego Ministry "Apostle" Sentenced To Life For Child Sex Trafficking (Jan. 22, 2013),* https://www.justice.gov/usao-mdfl/pr/en-fuego-ministry-apostle-sentenced-life-child-sex-trafficking.
[45] *Id.*

account in determining what sentence is needed to achieve rehabilitation.[46] A defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence."[47] Mr. Caudill has accepted responsibility and pled guilty to both counts in the Information.[48]   The commentary to § 3E1.1 explains, "[t]he reduction of offense level ... recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates acceptance of responsibility for his offense ... is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility." U.S.S.G. § 3E1.1. Mr. Caudill's offense level, even after receiving the three point reduction for acceptance of responsibility, does not affect his guideline range. Since his guideline range would remain the same whether he plead guilty or not, the effect on the guidelines is as if he went to trial and he does not receive any credit for acceptance of responsibility. This therefore nullifies his acceptance of responsibility. The nullified acceptance of responsibility warrants a downward variance.

"Today I carry heavy remorse and guilt about the situation at hand and my actions. Saying that I am very ashamed of myself and my actions are an understatement, but I am ashamed to say the least."[49] While detestable and clearly

---

[46] *See Brady v. United States,* 397 U.S. 742, 753 (1970).
[47] *Smith v. Wainwright,* 664 F.2d 1194, 1196 (11th Cir.1981).
[48] PSR ¶3, ¶4.
[49] App. B.; PSR ¶35.

wrong, life imprisonment for his conduct is greater than necessary. Still, Mr. Caudill comprehends the fact that there are real victims that were harmed and that his conduct perpetuated this harm, and for that, he is deeply apologetic. With regard to the victims, Mr. Caudill writes, "I often think about how my actions affected their mental health and quality of life. I am beyond sorry for contributing to their trauma. The word sorry does not do justice for the sorrow and pain I feel for them."[50]

### An Appropriate Sentence for Mr. Caudill

Prior to his arrest, Mr. Caudill earned his high school diploma, had a steady job and was an active and proud father. When speaking to Dr. Sullivan about his son, Mr. Caudill said, "he's my little pride and joy."[51] Mr. Caudill helped support his mother and his son financially and emotionally. He understands that his actions hurt them the most. Mr. Caudill writes in his letter to the Court, "I am all that my mom has out there, and I know that she struggles to stay afloat without my presence and that is completely my fault. I am sorry to my son to whom I left without a father and caretaker."[52]

One of the goals of sentencing is rehabilitation. Mr. Caudill has engaged in post-offense rehabilitation. Mr. Caudill was evaluated by Dr. Sullivan before he pled guilty in May of 2025.[53] In her report, she explained that Mr. Caudill could

---

[50] App. B.
[51] Dr. Sullivan Psychological Evaluation, 8.
[52] App. B.
[53] *See* App. A.

benefit from intensive psychotherapy with a psychologist or other therapist with expertise in the treatment of individuals with histories of trauma, recurrent depression, Posttraumatic Stress Disorder, pornography addiction and alcohol use problems with the sooner interventions, the better the prognosis.[54] Since Mr. Caudill's guilty plea, he has met with a licensed marriage and family therapist, Jack (Benji) Stultz, on eight occasions.[55] In the therapy sessions, Mr. Caudill expressed remorse for his actions and came to a realization that had he been able to be open about his own sexual abuse, it could have affected his beliefs on sexual behavior, boundaries and using sexual gratification to cope at times in his life.[56] He has gained a lot of insight into his actions and been given tools to cope with his trauma. "Being able to freely talk about my traumas and addictions has helped me tremendously in a lot of ways, including allowing me to gain mental clarity and understanding how and why my mind works the way that it does."[57] Prior to meeting with Mr. Stultz, Mr. Caudill was engaged in outpatient sex offender treatment as mandated by his probation in Brevard County.[58] At the time, Mr. Caudill was reluctant to being completely open in outpatient therapy. He discussed the sexual abuse he experienced by older girls but not about the sexual abuse by older boys.[59] "Men are often reluctant to disclose in therapy that they have

---

[54] *Id.*

[55] See App. C.

[56] *Id.*

[57] App. B.

[58] *See* App. F.

[59] Dr. Sullivan Psychological Evaluation, 7.

experienced sexual abuse by other males, as there is often a considerable amount of shame associated with it. It takes time for them to build the trust needed to discuss it with the therapist and with the treatment group." Mr. Caudill was open with Mr. Stultz in ways he was not open to his previous provider, Dr. Bowen. While meeting with Dr. Bowen, Mr. Caudill was also receiving psychiatric treatment and being prescribed medication for his Major Depressive Disorder.[60] The medication helped Mr. Caudill view his life and his charges in a different light. Since meeting with Mr. Stultz, Mr. Caudill has been able to understand himself and his actions, he has been able to face the monsters. "Meeting with my therapist, Benji, is something I always look forward to because I know he is guiding me on the right path for self-improvement and becoming mentally healthy which I wish to achieve desperately."[61]

The factors prevalent in Mr. Caudill's background, namely his own child sexual abuse, losing a parent at a young age, his acceptance of responsibility, his post-offense rehabilitation make a downward variance reasonable. Even if this Court were to impose the mandatory minimum, a sentence of ten years is six and a half years more time than he has ever done before. A downward variance will serve as adequate deterrence and just punishment for someone who has only recently spent over a year in prison. Further, there are collateral consequences associated with a conviction, especially a conviction under 18 U.S.C. §2422(b) that

---

[60] *Id.*
[61] App. B.

-14-

involve punishment not contemplated by the guidelines. Mr. Caudill will be a convicted felon, he will also be required to register, for life, as a sex offender. He will have his name, photograph, and charge listed on public forums, and will have new restrictions on where he can live. This registration is for life and will extend well beyond any sentence of incarceration or supervised release.

## Conclusion

Mr. Caudill must be punished for his crime, and he will be sent to prison. He has accepted responsibility for his actions and the punishment that comes with that. Given his history of trauma, his age, and his post-offense rehabilitation, a downward variance is appropriate. Mr. Caudill wants to keep trying to learn and improve himself. "Being in jail has given me a great start to the reformation process. I have learned so much about myself, my traumas, and the way my traumas affect my behavior through therapy and a lot of self-reflection." Mr. Caudill has used his time wisely in jail, self-reflecting and trying to better himself by participating in programming and therapy. He has earned several certificates of completion for the programming.[62] Mr. Caudill has the support of his family and will continue on the path to self-improvement when he gets to the Bureau of Prisons, while on supervised release and afterward. Mr. Caudill submits that a downward variance followed by a reasonable period of supervised release, is a reasonable sentence in this case and one that is sufficient but not greater than necessary to accomplish the purposes of 18 U.S.C. §3553.

---

[62] App. G.

Respectfully submitted,

CHARLES L. PRITCHARD Jr.,
FEDERAL DEFENDER, MDFL

/s/Aziza Hawthorne
Aziza Hawthorne, Esq.
Assistant Federal Defender
Massachusetts Bar No: 709255
201 South Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: (407) 648-6338
Facsimile: (407) 648-6095
E-Mail: aziza_hawthorne@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of February 2026 a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send a notice of the electronic filing to Assistant United States Attorney, Patrick Flanagan.

/s/ Aziza Hawthorne
Counsel for Mr. Caudill